IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE MADRID,

    Plaintiff,

v.                                                                                                                         No. 1:25-cv-00029-MLG-LF

WELLS FARGO BANK, NATIONAL ASSOCIATION
d/b/a WELLS FARGO BANK, N.A.,

Defendant.

**PROPOSED FINDING AND RECOMMENDED DISPOSITION
REGARDING DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

      This matter comes before the Court on the motion to dismiss filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo") (Doc. 30). United States District Judge Matthew Garcia referred this motion to me under 28 U.S.C. § 636(b)(1)(B), (b)(3), and *Virginia Beach Federal Savings & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court decisions on substantive motions and an ultimate disposition of the case. Doc. 32. Having reviewed the motion, the law, and being otherwise fully advised, I recommend that the Court grant the Motion to Dismiss (Doc. 30) and dismiss Mr. Madrid's second amended complaint for the reasons discussed below.

**BACKGROUND**

      In November 2024, Mr. Madrid filed a pro se complaint against Wells Fargo and Michael Santomassimo (Wells Fargo's Chief Financial Officer) in New Mexico state court seeking a "release" from his mortgage and punitive damages because of alleged "breach of contract," "fraud, conspiracy, racketeering, coercion, and collusion." Doc. 1-1 at 3–5.

Defendants removed the case to this Court on January 10, 2025, invoking the Court's diversity jurisdiction. Doc. 1. Soon thereafter, on January 16, 2025, the Defendants filed their first motion to dismiss. Doc. 4. Mr. Madrid responded by first filing an amended complaint on January 30, 2025 (Doc. 7), followed by a second amended complaint ("SAC") on January 31, 2025 (Doc. 9). Mr. Madrid also moved to dismiss his claims against defendant Santomassimo. Doc. 10. Defendants concurred, Doc. 18, and the Court dismissed the claims against Santomassimo without prejudice on April 23, 2025, Doc. 26.

On July 9, 2025, the Court denied the first Motion to Dismiss as moot because Mr. Madrid had timely filed his second amended complaint within 21 days of the motion's filing. Doc. 29 at 3; *see* FED. R. CIV. P. 15(a)(1)(B). Having found Mr. Madrid's second amended complaint to be the operative complaint, the Court informed Wells Fargo that it could respond to the SAC through an answer or new motion within 21 days. Doc. 29 at 3. Wells Fargo timely filed the current Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 30, 2025 (Doc. 30). Mr. Madrid did not file a response to the motion. In its Notice of Completion of Briefing (Doc. 31), Wells Fargo represented that on August 25, 2025, Mr. Madrid informed counsel for Wells Fargo that he was no longer able to participate in the case, did not intend to file a response or any further submissions, and that he authorized Wells Fargo's counsel to communicate to the Court his "preference that the case be dismissed without prejudice." Doc. 31 at 1 ¶ 2.

As this motion depends on the sufficiency of the facts alleged in the SAC, those facts are set forth as follows: Mr. Madrid contends that on or about March 31, 2022, he entered into an "alleged mortgage loan agreement" for a piece of property. Doc. 9 ¶ 5. Mr. Madrid states that Wells Fargo misrepresented the nature of the mortgage agreement by representing it as a loan of

2

money, when actually Wells Fargo "treated the promissory note allegedly signed by Plaintiff as an asset and used it to generate value through securitization." *Id.* ¶ 6. Mr. Madrid contends that this misrepresentation is a material breach of the mortgage agreement, and that the agreement is thus invalid because the consideration underlying the transaction was based on the value of his promise to pay rather than actual cash value. *Id.* ¶¶ 7–8.

Mr. Madrid further contends that he requested the following documents from Wells Fargo: the original promissory note, proof of assignment and chain of title for the promissory note, and evidence of compliance with the Uniform Commercial Code. *Id.* ¶ 9. Mr. Madrid asserts that Wells Fargo did not provide those documents, and that Wells Fargo "has continued to demand payment under circumstances that suggest fraudulent misrepresentation and improper accounting practices." *Id.* ¶ 10. Those circumstances are not described. Mr. Madrid stated that on March 20, 2024, he issued a "Notice of Dispute" to Wells Fargo seeking clarification, and that Wells Fargo's responses were inadequate or unresponsive. *Id.* ¶ 12. Those responses are not described further. Mr. Madrid asserts that Wells Fargo's actions have caused him "financial harm, uncertainty regarding the validity of the alleged agreement, and emotional distress." *Id.* ¶ 13.

Additionally, Mr. Madrid "references the affidavit of Walker Todd, an expert in banking practices" to support his contention that Wells Fargo's practice of treating promissory notes as assets violates standard banking principles. *Id.* ¶ 11. Mr. Madrid also references a "Notice of Dispute" that he issued to Wells Fargo. *Id.* ¶ 12. However, no documents, nor any exhibits at all, are attached to the SAC. Twenty-five days after filing the SAC, Mr. Madrid filed an "Affidavit of Mailing" (Doc. 24) containing several exhibits, including two notices of "Dispute and Demand" and a 2003 affidavit by Walker Todd that appears to have been filed in an unrelated

Michigan state court action. Doc. 24 at 2–11, 144–57. Wells Fargo attached a copy of the promissory note and mortgage agreement at issue in this case to its motion and asks the Court to consider these documents in deciding the motion. Doc. 30 at 1 n.1; Doc. 30-1; Doc. 30-2.

## ANALYSIS

Wells Fargo moved to dismiss Mr. Madrid's SAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Doc. 30 at 1. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). However, the Court must "disregard conclusory statements and look only to whether the remaining . . . factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Although a complaint need not contain "detailed factual allegations," it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 544–55). Moreover, if factual allegations in a complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191 (internal citations and quotations omitted). Claims of fraud must provide the defendant notice of the "who, what, where, when, and how" of the alleged fraud with particularity. *Clinton v. Sec. Benefit Life Ins.*

*Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023).  When ruling on a Rule 12(b)(6) motion, a court's function "is not to weigh potential evidence that the parties might present at trial," but rather "to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

Mr. Madrid is proceeding pro se.  In reviewing a pro se complaint, the Court liberally construes the factual allegations.  *See Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir. 1992).  However, a pro se plaintiff's pleadings are judged by the same legal standards that apply to all litigants, and pro se plaintiffs must abide by the applicable rules of court.  *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).  The Court may not craft legal theories for a pro se plaintiff or supply factual allegations to support the plaintiff's claims.  *Hall v. Bellmon*, 935 F.2d 1106, 1100 (10th Cir. 1991).  Nor may the Court assume the role of advocate for pro se litigants.  *Id.*

Mr. Madrid did not respond to Wells Fargo's motion.  While this District's local rules generally provide that a party's failure to timely file and serve a response to a motion constitutes consent to that motion, D.N.M.LR-Civ. 7.1(b), when a pro se plaintiff fails to respond to a motion to dismiss, the "district court may not grant a 12(b)(6) dismissal based solely on the plaintiff's failure to respond.  Instead, it must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Persik v. Manpower Inc.*, 85 F. App'x 127, 130 (10th Cir. 2003) (internal citations and quotations omitted).  In his second amended complaint, Mr. Madrid asserts five claims for relief, which the Court will address in turn after clarifying the materials considered in deciding this motion.

5

In deciding a Rule 12(b)(6) motion, the Court focuses on the operative complaint. *Tal*, 453 F.3d at 1252. While, generally, "a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvardo v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotations omitted). In his SAC, Mr. Madrid refers briefly to an affidavit by Walker Todd and a "Notice of Dispute" he issued to Wells Fargo. *See* Doc. 9 ¶¶ 11–12. However, neither the affidavit nor the notice was attached to the SAC. Both an affidavit by Walker Todd and two notices of "Dispute and Demand" were filed twenty-five days later as part of a series of exhibits labeled as an "Affidavit of Mailing," though there is no indication that these were intended to be attached to the SAC. *See* Doc. 24 at 2–11, 144–57. Even assuming that the affidavit and notices included in the Affidavit of Mailing are the documents that Mr. Madrid refers to in his SAC, Mr. Madrid should have sought leave to amend the SAC to include these exhibits. *See* FED. R. CIV. P. 15(a). The Court thus will not consider these documents in deciding this motion.

Wells Fargo attached to its motion the promissory note (Ex. 1, Doc. 30-1 at 1–5) and the mortgage (Ex. 2, Doc. 30-1 at 6–25) at issue in this case and asks the Court to consider these documents in making its decision. *See* Doc. 30 at 1 n.1. "[W]hen parties submit materials outside of the pleadings in support of or in opposition to a Rule 12(b)(6) motion, a court has broad discretion whether to accept and consider them." *Dobson v. Anderson*, 319 F. App'x 698, 702 (10th Cir. 2008). The Court may consider the promissory note and the mortgage because Mr. Madrid refers to these documents in his SAC, *see, e.g.*, Doc. 9 ¶¶ 5, 7, 9, 15, and they are central to his claims, *see generally* Doc. 9. Moreover, Mr. Madrid has not disputed the

documents' authenticity despite the opportunity to do so. Nonetheless, although the Court may consider these documents, they are not crucial to its decision.

The Court addresses each claim for relief in turn.

I. **Breach of Contract**

Mr. Madrid first asserts that the mortgage agreement he entered into with Wells Fargo is invalid, both because Wells Fargo failed to provide consideration in the form of cash value and because it misrepresented the agreement's nature. *Id.* ¶ 15. Mr. Madrid argues that Wells Fargo misrepresented the agreement's nature by not disclosing that the promissory note would be used as an asset to generate value. *Id.* ¶ 6. Mr. Madrid contends that the lack of consideration and misrepresentation amount to a material breach of the contract, giving rise to a cause of action for breach of contract. *Id.* ¶¶ 15–16. Wells Fargo responds that (1) the breach of contract claim fails because Mr. Madrid did not identify a specific provision of the agreement that was breached; (2) the allegation that Wells Fargo did not provide consideration is meritless because consideration does not need to be in the form of cash value, and because Mr. Madrid does not allege that Wells Fargo failed to transfer the promised funds to him; and (3) Wells Fargo did not misrepresent the nature of the agreement, because the agreement specifically provides that the promissory note may be sold. Doc. 30 at 3–5.

To state a claim for breach of contract in New Mexico, a plaintiff must allege the existence of a valid contract, the defendant's breach of the contract, causation, and damages. *Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, ¶ 18, 119 N.M. 436, 442, 891 P.2d 1190, 1196, *overruled on other grounds by Sunnyland Farms, Inc. v. Central New Mexico Elec. Co-op., Inc.*, 2013-NMSC-017, 301 P.3d 387. A legally valid contract "must be factually supported by an offer, an acceptance, consideration, and mutual assent." *DeArmond v.*

*Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 9, 134 N.M. 630, 634, 81 P.3d 573, 577. Mutual assent requires both parties to a contract to "have the same understanding of the contract's terms." *Id.* at ¶ 20, 134 N.M at 637, 81 P.3d at 580. Construing Mr. Madrid's allegations as true, the SAC essentially states that the first element of a breach of contract claim—that there is a valid contract in the first place—cannot be met. He states that the "mortgage agreement is invalid due to Defendant's failure to provide consideration in the form of cash value and its misrepresentation of the agreement's nature." Doc. 9 ¶ 15. In short, he alleges there is no valid contract; without a contract, there can be no breach, and no cause of action for breach of contract. *Joseph E. Montoya & Assocs. v. State*, 1985-NMSC-074, ¶ 12; 103 N.M. 224, 226, 704 P.2d 1100, 1102. Accordingly, I recommend that the Court find that Mr. Madrid has failed to state a plausible claim for relief based on breach of contract.

## II.   Fraudulent Misrepresentation

Next, Mr. Madrid asserts that Wells Fargo knowingly made false representations by misrepresenting its role as a creditor and failing to disclose that the promissory note was treated as an asset rather than providing actual cash value. Doc. 9 ¶ 19. Mr. Madrid contends that he reasonably relied on those fraudulent misrepresentations to his detriment. *Id.* ¶ 20. Wells Fargo responds that these assertions fail to meet the heightened pleading standard required for fraud claims by not identifying who made the misrepresentation, when and how the misrepresentation was made, and where the misrepresentation occurred. Doc. 30 at 6 (citing *Clinton*, 63 F.4th at 1277). Wells Fargo further argues that New Mexico state law provides for securitization of the promissory note without consent or knowledge of the borrower. *Id.* at 7. Finally, Wells Fargo argues that Mr. Madrid does not specify how the reliance on the fraudulent misrepresentation was to his detriment. *Id.*

To state a claim for relief for fraudulent misrepresentation in New Mexico, the plaintiff must allege that

> (1) a representation of fact was made (either by commission or by omission) that was not true, (2) the defendant made the representation knowingly or recklessly, (3) the representation was made with the intent to induce the plaintiff to rely upon it, and (4) that the plaintiff relied on the representation.

*Encinas v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 22, 310 P.3d 611, 620.  Here, Mr. Madrid alleges that Wells Fargo misrepresented both its role as a creditor and the nature of the agreement.  *See* Doc. 9 ¶ 19.  However, Mr. Madrid does not allege that Wells Fargo made those representations knowingly or recklessly, or that Wells Fargo intended to induce him to rely upon those representations.  Mr. Madrid also alleges that he relied upon those misrepresentations to his detriment, *id.* ¶ 20, but he does not explain how.  While Mr. Madrid is not required to provide "detailed factual allegations" to support his claim, the absence of any supporting facts casts that allegation into the category of "labels and conclusions."  *Twombly*, 550 U.S. at 555; *see also Clinton*, 63 F.4th at 1275 ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement.").  Accordingly, I recommend that the Court find that Mr. Madrid has failed to state a plausible claim for fraudulent misrepresentation.

### III.    Violation of the UCC

Mr. Madrid asserts that Wells Fargo's failure to provide proof of the original promissory note and chain of title violates the requirements of Article 3 of the UCC, thus clouding the title and creating "legal uncertainty regarding the enforceability of the debt."  Doc. 9 ¶¶ 23–24.  Wells Fargo responds that Mr. Madrid's claim fails because he does not cite to a provision of the UCC that permits suit under these circumstances.  Doc. 30 at 7–8.  Even if suit were permitted, Wells Fargo argues that it is not required to provide proof of the original note and may enforce the note

without possessing it. *Id.* at 8. Next, Wells Fargo argues that securitization of the promissory note does not cloud title, because the borrower still holds legal title to the property at issue and the mortgage already encumbers the property. *Id.* at 8–9. Finally, Wells Fargo argues that it does not need to demonstrate it is the note and mortgage's rightful owner, because Mr. Madrid does not allege that Wells Fargo is seeking to foreclose on the property. *Id.* at 9.

New Mexico has codified the UCC in Chapter 55 of its statutes. *See* N.M. STAT. ANN. §§ 55-1-101 to -12A-306 (hereinafter "New Mexico UCC"). Article 3 covers negotiable instruments and who may enforce them, *see id.* §§ 55-3-301 to -805, but Wells Fargo is correct that "the present status and whereabouts of [a promissory] note have no bearing on its validity and enforceability until such time as a party seeks to enforce it." *Montano v. Central Loan Admin. & Reporting*, No. 1:21-cv-00139-JCH-LF, 2021 WL 5834221, at *4 (D.N.M. Dec. 9, 2021), *adopted over objections*, 2022 WL 443526 (D.N.M. Feb. 14, 2022). Mr. Madrid is free to raise these arguments as defenses to an enforcement action brought against him, but he has not alleged that Wells Fargo is foreclosing on the property at issue or otherwise seeking to enforce the promissory note. *See id.*; *Galloway v. Mortgage Strategies Grp., LLC*, No. 1:14-cv-00022-KG-KBM, 2014 WL 12783166, at *4 (finding that lack of standing to pursue a foreclosure action under the New Mexico UCC "is an affirmative defense to a foreclosure action, not an independent claim for relief") (D.N.M. Nov. 18, 2014); *see also Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 27, 369 P.3d 1046, 1055–56 (describing lack of standing to foreclose as a defense in a foreclosure action). I recommend that the Court find that Mr. Madrid has failed to state a plausible claim for violation of the New Mexico UCC. Moreover, because this claim is not recognized under New Mexico law, I recommend that the Court dismiss this claim with prejudice.

10

IV. **Violation of Consumer Protection Laws**

Mr. Madrid next argues that Wells Fargo's failure to disclose the securitization or monetization of the promissory note constitutes a "material violation of federal and state consumer protection laws." Doc. 9 ¶ 26. No federal or state laws are named or cited. Mr. Madrid then simply states that Wells Fargo's actions "were deceptive, unfair, and harmful to [his] financial interests." *Id.* ¶ 27. Wells Fargo responds by noting that Mr. Madrid failed to identify which consumer protection laws it violated, and that federal law permits the securitization of promissory notes. Doc. 30 at 9–10.

Without supporting facts, Mr. Madrid's statements are no more than labels and conclusions insufficient to state a plausible claim for relief. *See Twombly*, 550 U.S. at 555; *see also Clinton*, 63 F.4th at 1275. Mr. Madrid asserts that Wells Fargo's actions have violated consumer protection laws, but Mr. Madrid does not identify those laws or the elements of a cause of action pursuant to those laws. *See* Doc. 9 ¶¶ 26–27. Nor does Mr. Madrid provide any facts to support his conclusion that Wells Fargo's actions were deceptive, unfair, and harmful to his financial interests. While I acknowledge the difficulty that pro se litigants may face in bringing a lawsuit, the Court cannot identify those laws and causes of action for Mr. Madrid. *See Hall*, 935 F.2d at 1110 (stating that it is not proper for "the district court to assume the role of advocate for the pro se litigant"). Accordingly, I recommend that the Court find that Mr. Madrid has failed to state a plausible claim for relief for violation of consumer protection laws.

V. **Wells Fargo's Lack of Standing to Enforce the Promissory Note**

Finally, Mr. Madrid asserts that Wells Fargo failed to establish standing under UCC Article 3 by not producing the original promissory note or a clear chain of title, and that without such standing, "any enforcement actions or demands for payment are invalid." Doc. 9 ¶¶ 29–30.

Wells Fargo restated its prior argument that the UCC does not require it to produce the original promissory note in order to enforce it, and that Wells Fargo does not need to establish standing because it is not seeking to foreclose on the property at issue. Doc. 30 at 10.

Mr. Madrid's claim here is similar to the previously discussed claim of a violation of the New Mexico UCC, and the analysis is the same. A party's standing to enforce a promissory note under Article 3 of the New Mexico UCC is appropriately addressed when that party seeks to enforce the note. *See Montano*, 2021 WL 5834221, at *4; *Galloway*, 2014 WL 12783166, at *4. Nothing in the SAC suggests that Wells Fargo has attempted to enforce the promissory note through a foreclosure action. Mr. Madrid is, of course, free to raise these arguments in his defense against any enforcement actions that Wells Fargo may later bring against him, but such arguments do not state an independent claim upon which relief can be granted. *See Galloway*, 2014 WL 12783166, at *4. Therefore, I recommend that the Court find that Mr. Madrid has failed to state a claim upon which relief may be granted regarding Wells Fargo's lack of standing to enforce the promissory note. And because this claim is not legally viable, I recommend that the Court dismiss it with prejudice.

## **CONCLUSION**

For the foregoing reasons, I recommend that the Court find that Mr. Madrid has failed to state a claim for relief in his second amended complaint. I further recommend that the Court dismiss Mr. Madrid's claims for breach of contract, fraudulent misrepresentation, and consumer law violations against Wells Fargo without prejudice. While Mr. Madrid's SAC fails to allege sufficient facts to state a plausible claim for relief on those claims, it is not patently obvious that any amendment on those claims would necessarily be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a

complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."). I recommend that the Court dismiss the New Mexico UCC claim and the lack of standing claim with prejudice because New Mexico law does not recognize either claim as an independent cause of action. Accordingly, I recommend that the Court GRANT Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (Doc. 30) and dismiss the breach of contract claim, the fraudulent misrepresentation claim, and the claim that Wells Fargo violated consumer protection laws without prejudice, and dismiss the New Mexico UCC claim and the lack of standing claim with prejudice.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
U.S. Magistrate Judge